DICKERSON LUMPKIN, plaintiff in error, vs. BURRELL JOHNSON, defendant in error.

The statute of frauds will apply to a verbal contract for the sale of land, unless there is part performance, or some matter, to prevent it from so applying.

In Equity, from Floyd county. Tried before Judge HAMMOND, at February Term, 1859.

This bill was filed by Dickerson Lumpkin, against Burrell Johnson, to compel the specific performance of an agreement for the sale and conveyance of lot of land, No. 212, in the

twenty-second district, third section, of originally Cherokee, now Floyd county.

The bill in substance, states, that in the month of December, 1848, complainant was about to purchase said lands from one Paschal Brisentine, his brother-in-law, who was the owner thereof. Their agreement was, that complainant was to pay $200 in three annual installments, and upon the payment of said purchase money, Brisentine was to execute titles to complainant. This contract or agreement was to be reduced to writing, and complainant was to give his notes for the purchase money; but before this agreement was consummated, Burrell Johnson, the father-in-law of complainant and of Brisentine, interposed, and proposed that he would advance the two hundred dollars to Brisentine for the lot of land, and take titles to himself, and would lease the premises to complainant, and give him four years to pay for the same, and at the expiration of that time, and on the payment of said $200, with interest, he would convey said land to complainant. To this proposition, complainant assented. Johnson paid the $200 to Brisentine, and received from him titles for the land—and, the bill alleges, the agreement between Johnson and complainant, was to be reduced to writing. That complainant went into possession and made improvements. Afterwards, learning that Johnson claimed the land as his own, he applied to him to reduce their agreement to writing. Some time after this, Johnson produced and tendered a lease, demising to complainants the premises for four years, and binding him to build a good dwelling house on the place, to clear thirty acres of land, and restricting complainant in the use of the timber, &c.; and merely adding at the bottom of the page, that " if complainant paid said Johnson for the said tract of land, he might then have the land," without naming the amount to be paid. That complainant refused to sign or enter into any such agreement, and Johnson refused to execute any other. Complainant then proposed to pay Johnson the $200 which

he had advanced to Brisentine for the land, and Johnson replied, that if complainant would pay him the same by 25th December next, thereafter, he would execute a deed to him for the lot. That at the time stipulated, he went to defendant and tendered to him the full amount of the purchase money, $200, and demanded titles, but he refused to receive the money or to execute titles.

The prayer of the bill was, that defendant be compelled to perform said contract—to accept said sum of money and execute to complainant good and legal titles to said lot of land, agreeably to the terms and true intent of their agreement.

The defendant, in answer, admits that complainant did make a verbal agreement with Brisentine for the purchase of the lot in question, at the price stated in the bill, in three equal annual installments; the first to become due 25th December, 1849, and that bond for titles was to be given as stated in complainant's bill. That complainant and Brisentine are his sons-in-law, and knowing that Brisentine was anxious to raise some money for which he had immediate use, and that Lumpkin was an improvident man, and a bad manager, with a view to accommodate Brisentine, and to secure a home for his daughter, Mrs. Lumpkin, and her children, he sought both parties, and proposed, if it was agreeable to them, to advance $200 to Brisentine for the lands, and to give Lumpkin four years to pay the purchase money and interest; that he would give him a lease for the land and a bond for titles. This proposition met the approbation of both parties, and was accepted by both. Defendant paid Brisentine $200 and took from him a deed of conveyance for the land; that Brisentine by agreement of the parties, drew up a lease or instrument of writing to be executed by complainant and defendant, containing their contract, which complainant refused to sign. Defendant admits, that at the time this disagreement occurred, he did say that if he had his money back he would " get out of this fuss;" when

Lumpkin said, " how long will you give me ; two weeks ?"
Defendant replied, " Yes, till Christmas." But defendant
denies that there was any contract or agreement to that effect.
It was said in consequence of the vexation which complain-
ant was giving him about the land, and complainant did not
say whether he would do it or not. Admits that he after
wards refused to execute titles to him, &c.

Upon the trial, *Paschal Brisentine* testified : That he was
the brother in-law of complainant, and son-in-law of defend-
ant. He had made a verbal contract with complainant to
sell him the lot of land in controversy, for $200 dollars, to
be paid in three equal annual installments, and the papers
were to be drawn up and signed afterwards. Witness pre-
pared the notes and other papers, but before they were sign-
ed, the defendant proposed to make an arrangement that he
thought would be beneficial to both parties. It was, that he,
defendant, would pay witness $200 by the 25th December,
and give Lumpkin four years to pay for the land. Lump-
kin was to clear thirty acres of land and make other improve-
ments. Witness drew up the contract in accordance with
the agreement ; Lumpkin refused to sign it, and there was
a good deal of grumbling between the parties. Johnson then
said he was tired of the fuss, and if he had his money back
he would be out of it. Complainant then asked Johnson
how long he would give him to pay him back ; would he
give him two weeks ? Defendant replied, " Yes, I will give
you till Christmas, as I have no need of the money to pay
Brisentine before that time." Complainant then said to
witness, " take notice to that."

*Larkin Barrett,* proved, that he let Lumpkin have $200,
and a day or two before the time expired, he went with
Lumpkin to defendant's ; Lumpkin said to him, that he had
come to pay him the money, and get a title to the land, and
that he had the $200 in hand. Defendant replied, " whose
superscription is that;" " render unto Cæsar the things that

are Cæsar's," and refused to take the money, and said if the land was to go to a stranger, he must have $400. Witness went along to write the deed.

The jury found for the defendant.

Whereupon, complainant's counsel moved for a new trial, on the ground, that the verdict was against law and equity, and the evidence; and further, because the Court charged the jury, among other things, that the statute of frauds applied to the agreement proved.

The Court refused the motion, and counsel for complainant excepted.

UNDERWOOD & SMITH, for plaintiff in error.

J. R. ALEXANDER, contra.

*By the Court.*—BENNING J. delivering the opinion.

Was the Court below right in holding, that the statute of frauds applied to the agreement which the bill sought the specific performance of.

That agreement was the agreement, if it could be called an agreement, by which, Johnson, the father-in-law of Lumpkin, promised Lumpkin, when he wanted " to get out of the fuss," that if Lumpkin would pay him, two hundred dollars, by the end of the year, he might have the land. Lumpkin, himself, never promised any thing on his part. But call this an agreement; then, was there any thing, to take it out of the statute of frauds? Nothing that we can see. There was not the thing of part performance. Lumpkin did nothing whatever, in performance of the agreement. He *offered* to pay the money, at the proper time, but that was not paying it. He was in possession of the land, it is true, but his being so, was under the previous contract, or, indeed contracts—not under this contract. It does not ap-

pear, that he laid out any labor or money on the land, *after* the making of this, the last contract.

For aught that we can see, then, the Court below was right, in holding, that the statute of frauds applied to the agreement.

And if the Court was right in holding that, then it could not be true, that the verdict was contrary to law and equity, or, contrary to evidence.

So we conclude, that none of the grounds of the motion for a new trial, were sufficient.

Judgment affirmed.

Judge LUMPKIN being related to one of the parties, did not preside.